UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| STEVE GREEN, ) | | |
| (Social Security No. XXX-XX-5381), ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | 3:05-cv-219-RLY-WGH | |
| ) | | |
| MICHAEL J. ASTRUE, COMMISSIONER ) | | |
| OF SOCIAL SECURITY,[1] ) | | |
| ) | | |
| Defendant. ) | | |

**MEMORANDUM DECISION AND ORDER**

**I.  Statement of the Case**

Plaintiff, Steve Green, seeks judicial review of the final decision of the agency, which found him not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") or Social Security Income ("SSI") under the Social Security Act ("the Act").  42 U.S.C. §§ 416(i), 423(d), 1381(a); 20 C.F.R. § 404.1520(f).  The Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff applied for DIB and SSI on April 2003, alleging disability since March 29, 2002.  (R. 57-59, 200-02).  The agency denied Plaintiff's application both initially and on reconsideration.  (R. 32-39).  Plaintiff appeared and testified at a hearing before Administrative Law Judge Marsha Stroup ("ALJ") on September 8, 2004.  (R. 213-38).

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michael J. Astrue, in his official capacity only, is substituted as the Defendant in this action.

Plaintiff was represented by an attorney; also testifying was a vocational expert ("VE"). (R. 213). On December 7, 2004, the ALJ issued her opinion finding that Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform a significant number of jobs in the regional economy. (R. 15-23). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 5-7). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on December 13, 2005, seeking judicial review of the ALJ's decision.

## II.  Medical Evidence

Plaintiff was seen at Methodist Hospital on March 29, 2002, after he reported being injured at work while trying to lift a very heavy object on a barge. (R. 136-38). He complained of severe low back pain, but denied any tingling or paraesthesias in his legs. (R. 136). X-rays of Plaintiff's lumbar spine were normal, and he was diagnosed with a lumbar strain. (R. 137-38). He was given Demerol, Phenergan and Morphine at the hospital, and then released with Lortab and Zanaflex. (R. 137).

Plaintiff saw Michael Scheinost, D.O., a workers compensation physician, the day of the accident. (R. 147). Dr. Scheinost assessed Plaintiff with a lumbar strain, saw him several times during the next month, and on April 22, 2002, restricted him to lifting no more than 20 pounds. (R. 141-46). In August 2002, Dr. Scheinost changed Plaintiff's restrictions, indicating that he could not lift more than 50 pounds. (R. 139).

In November 2002, Plaintiff began seeing Agustin Sierra, M.D., an orthopaedic surgeon, regarding his lower back pain. (R. 171). Dr. Sierra noted that, after Plaintiff was released to light duty work by Dr. Scheinost in April 2002, Plaintiff's employer had no work

for him, and he was laid off.  On examination, Plaintiff had tenderness in the L5 spinous process area, forward flexion of 80 degrees (90 is normal), extension of 30 degrees (normal), and lateral bending of 30 degrees (normal).  Plaintiff complained of pain in all movements of the lumbar spine, but his gait was normal.  Straight leg raising produced pain at about 60 degrees bilaterally, but there was no weakness in the lower extremities.  Plaintiff could walk on his heels and toes, and his reflexes and sensation were normal.  Dr. Sierra's impression was a sprain of the lumbar spine.

A few days later an MRI of the lumbar spine showed multi-level degenerative disc disease and protrusions, the most prominent at L3-4, with only mild sac effacement at that level.  (R. 172).  The radiologist indicated that this could lead to nerve root impingement, but that would need to be clinically correlated.

In January 2003, Dr. Sierra stated that the MRI showed a disc herniation at L3 and bulging discs at L4 and L3.  (R. 168).  Plaintiff was to see a physical therapist and a pain specialist.

Plaintiff also saw Mahendra R. Sanapati, M.D., a pain specialist, in January 2003, on referral from Dr. Sierra.  (R. 157-61).  Plaintiff stated that he had not worked since his injury and that his pain was an "8" on a scale from 0-10.  (R. 160).  He complained of persistent lower back pain that radiated to his right extremity and numbness in his right foot.  He described the pain as constant, throbbing, shooting, stabbing, sharp, pressing, wrenching, hot, smarting, aching, penetrating, intense and nagging.  (R. 158).  A lumbar MRI showed multi-level degenerative disc disease and protrusions at L1-2, L3-4, L4-5, and L5-S1 with a prominent disk herniation at L3-4.  (R. 159).  On examination, Plaintiff had tenderness along

the right lumbar area corresponding to L3-4 and L4-5 with pain radiating to the right hip. (R. 161). Straight leg raising was normal, and Plaintiff had full motor strength and intact sensation in the lower extremities. His deep tendon reflexes were 2+ at the knees and 1+ at the ankles. Plaintiff had multi-level degenerative disease of the lumbar spine, right-sided lumbar radiculopathy, lower back pain, and a prominent disc herniation at L3-4. Dr. Sanapati suggested performing epidural steroid injections, but insurance approval had not been granted by the end of the month. (R. 157, 161).

Plaintiff underwent physical therapy in January 2003. (R. 148-56). The records showed fair improvement over the course of two weeks with pain levels dropping from 4/5 to 2/5 in intensity. (R. 149, 154). As the ALJ noted, on January 13, 2003, Plaintiff reported increased pain as he had to change a flat tire over the weekend. (R. 150).

In March 2003, Dr. Sierra noted that Plaintiff reported that he had weakness when he stood and walked and this caused him to fall down. (R. 166). He reported that Plaintiff had six physical therapy treatments approved and also had traction, ultrasound, and was fitted with a lumbar brace. Plaintiff reported that these treatments helped at the time. On examination, there was tenderness in the lumbar area and lumbar flexion of 60 degrees, extension of 20 degrees, and lateral bending of 20 degrees bilaterally. Straight leg raising of the legs produced pain in the lumbar area at about 45 degrees with increased pain when the right leg was raised. The other findings remained the same. Plaintiff was to have a neurological consultation. He was to do no bending of the back and no lifting beyond ten pounds.

On March 11, 2003, Dr. Sierra opined that Plaintiff should lift no more than ten pounds, engage in no bending of the back, and was to walk as tolerable. (R. 166).

In May 2003, Dr. Sierra completed a Kentucky Workers Claim Form 107-1. (R. 162–64). Plaintiff's diagnosis was lumbar disc herniation at L3. (R. 163). Dr. Sierra thought that the work injury had caused Plaintiff's impairment, which was a 13% impairment of the whole person. Dr. Sierra thought that Plaintiff should not squat, stoop, kneel, crawl or climb. Standing, walking and sitting should be limited to 30 minutes without a break, and a total of two hours per day. (R. 164).

Plaintiff saw Johnathon Edge, M.D., on June 14, 2003, for a consultative evaluation at the request of the state agency. (R. 174-78). Dr. Edge noted that Plaintiff was in no apparent distress and was able to walk into the examination room with a normal gait and could get on and off the examination table without assistance. (R. 175). Plaintiff's reflexes were 2+, equal, and symmetric throughout. (R. 176). Plaintiff's spine was straight, and there was some tenderness around L5 to palpation. Range of motion was 60 degrees of forward flexion and 20 degrees of lateral bending bilaterally. Straight leg raising was positive at 45 degrees. Plaintiff could walk on his heels and toes, squat with difficulty, and sensation was grossly preserved. The range of motion was preserved in all extremities although Plaintiff reported pain with flexion of the lumbar spine. (R. 176). Dr. Edge also noted that Plaintiff's strength was intact in all extremities and that Plaintiff was able to perform many daily activities including grasping objects, buttoning/unbuttoning, opening doors, holding pens, and writing. (R. 176).

In September 2003, a state agency physician reviewed the record and concluded that Plaintiff could perform the exertional requirements of light work with frequent climbing of ramps and stairs; occasional climbing of ladders, ropes, and scaffolds; and occasional

stooping, kneeling, crouching and crawling. (R. 104-05). The physician discussed the medical evidence and stated that Dr. Sierra's limitations appeared excessive and were not supported by the medical evidence. (R. 110).

In January 2004, Plaintiff saw James S. Mooney, M.D., apparently for the first time, for a physical disability examination. (R. 199). Dr. Mooney completed a "Report of Medical Examination" in which he stated that Plaintiff had a tender lower back; a left ankle reflex of 1+; a decreased range of motion due to pain; negative straight leg raising; a stiff back; and spasms. (R. 189). Plaintiff's diagnosis was degenerative disc disease, and Dr. Mooney opined that he might be a neurosurgical candidate. (R. 191). Plaintiff could sit or stand for 15-30 minutes and then needed to rest. He could lift 5-10 pounds and could not crawl. (R. 192). Dr. Mooney checked "yes" to questions regarding whether Plaintiff was prevented by his injuries from doing his past work or any other work. (R. 191).

Plaintiff returned to see Dr. Mooney in April 2004, and Dr. Mooney noted that Plaintiff saw an orthopaedic surgeon who found that he had an L3 disc herniation and some protrusion at L4 and L5. (R. 185, 198). Plaintiff needed a neurological consultation. He reported radiating pain down both legs, especially the right. Vioxx had not helped him, and he had stopped taking it. He was tender over the lower back, straight leg raising was equivocal bilaterally, and Plaintiff's leg strength appeared full. His reflexes were intact.

On May 19, 2004, Plaintiff saw David M. Eggers, M.D., a neurosurgeon, at the request of Dr. Mooney. (R. 179-82). He described pain into the right thigh that radiated medially down to the knee and occasionally into the calf. (R. 180). Plaintiff reported occasional numbness into both shins and denied any left leg pain or bowel or bladder dysfunction.

Plaintiff described ringing in both ears, earaches, joint and back pain, headaches and depression. He was able to move off and on the examination table without much difficulty and could navigate the room and climb stairs without difficulty. Plaintiff was alert and fully oriented. (R. 181). His recent and remote memory was intact. His mood, affect, fund of knowledge and cognitive function were appropriate for his age. He had brisk +2 reflexes in the knees and ankles, negative straight leg testing, and full motor strength in the lower extremities. He had no pain to palpation in the lumbar spine, and sensation was intact. Dr. Eggers indicated that Plaintiff described mainly back pain, not too much in the way of radicular leg pain. (R. 179). On examination, straight leg raising was normal bilaterally, and Plaintiff had normal motor, reflex and sensory testing in the lower extremities. A lumbar MRI performed recently showed disc bulging at L3-4 and L4-5 without significant canal compromise. (R. 183). Dr. Eggers' impression was chronic intractable low back pain after an apparent lumbar strain, as well as degenerative lumbar disc disease. (R. 179). There was no indication for surgery.

In June 2004, Dr. Mooney indicated that the neurosurgeon had nothing to offer Plaintiff. (R. 197). He prescribed Percocet and advised Plaintiff to see Dr. Bloss, an orthopaedist.

Plaintiff saw Bryant A. Bloss, M.D., an orthopaedist, on referral from Dr. Mooney, in July 2004. (R. 196). Plaintiff stated that he had lower back pain that radiated down his right leg into his knee and that his right leg gives out–it had twice caused him to fall down the steps. Also, the pain radiated into his shoulder and neck. Plaintiff took only over-the-counter pain medication. Plaintiff's May 2004 MRI showed herniated discs at L3-4 and L4-5 and

degenerative discs at L2-3. (R. 194). On examination, Plaintiff could heel and toe walk; was tender in the mid-lumbar spine on the left and the lower lumbar spine on the right; could flex 75 degrees, extend 20 degrees, and laterally bend 25 degrees to the right and 15 degrees to the left. Straight leg raising referred to the lower back, left at 78 degrees and right at 78 degrees. There were positive Patricks and Kempfs signs on the right. Dr. Bloss performed an epidural block and expected to do two more. (R. 194).

### III. Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this Court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the Court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

## IV.  Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that he suffers from a "disability" as defined by the Act.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  The Social Security regulations set out a sequential five step test the ALJ is to perform in order to determine whether a claimant is disabled.  *See* 20 C.F.R. § 416.920.  The ALJ must consider whether the claimant:  (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy.  *Id.*  The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner.  *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V.  The ALJ's Decision

The ALJ concluded that Plaintiff was insured for DIB through the date of her decision, and Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (R. 22).  The ALJ continued by finding that, in accordance with 20 C.F.R. § 416.920(b), Plaintiff had one impairment that is classified as severe:  lumbar degenerative disc disease.  (R. 22).  The ALJ concluded that this impairment did not meet or substantially equal any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 22).  Additionally, the ALJ

opined that Plaintiff's allegations regarding the extent of his limitations were not fully credible. (R. 22). Consequently, the ALJ concluded that Plaintiff retained the RFC for light work with: (1) the option to sit or stand every 30 minutes; and (2) only occasionally performing bending, twisting, squatting, kneeling, overhead reaching, and push/pull activities, and no climbing. (R. 22-23). The ALJ determined that, because of these limitations, Plaintiff could not perform his past work. (R. 23). The ALJ went on to conclude that, based on his limitations, Plaintiff retained the RFC to perform a significant range of light work (including 2,500 jobs as hand packer, 18,000 jobs as assembler, and 6,250 jobs as a production inspector). (R. 23). The ALJ concluded by finding that Plaintiff was not under a disability. (R. 23).

## VI.  Issues

The Court concludes that Plaintiff, in his pro se brief, has essentially raised two issues. The issues are as follows:

1. Was the ALJ's RFC assessment supported by substantial evidence?
2. Was the ALJ's credibility determination adequate?

**Issue 1:  Was the ALJ's RFC assessment supported by substantial evidence?**

In examining Plaintiff's pro se brief, the Court concludes that his only real concern was with the ALJ's RFC assessment. The ALJ concluded that Plaintiff retained the RFC for light work with: (1) the option to sit or stand every 30 minutes; and (2) only occasionally performing bending, twisting, squatting, kneeling, overhead reaching, and push/pull activities, and no climbing. This RFC was supported by substantial evidence. While Plaintiff did have opinions from Dr. Mooney and Dr. Sierra that suggested that he was limited to lifting no more

than ten pounds and that he could only sit or stand for periods of time that would preclude light work, there was other evidence in the record that supported the ALJ's decision. For example, Dr. Edge found mostly normal results upon physical examination, including normal strength and range of motion in all extremities, and concluded that Plaintiff could perform many daily activities. Dr Eggers also examined Plaintiff and found mostly normal exam results. A state agency physician examined Plaintiff's record in September 2003 and opined that Plaintiff could perform light work; in fact, the state agency physician's evaluation provided an even less limited RFC than the ALJ eventually found. Additionally, Plaintiff has engaged in relatively conservative treatment, and no physician appears to have recommended surgery. The Court also notes that Dr. Sierra's opinion was provided in a worker's compensation proceeding and is, therefore, not controlling.

The ALJ, in this instance, reasonably took into consideration Plaintiff's alleged back pain and provided the option to sit or stand every 30 minutes. The ALJ also took into consideration Plaintiff's limitations and limited him to no climbing and to only occasional bending, twisting, squatting, kneeling, overhead reaching, and push/pull activities. This was a reasonable assessment of Plaintiff's RFC and is supported by substantial evidence.

**Issue 2: Was the ALJ's credibility determination adequate?**

Plaintiff also indirectly calls into question the ALJ's credibility determination. An ALJ's credibility determination will not be overturned unless it is "patently wrong." *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000). Plaintiff had alleged that he lied down for 20 hours out of a 24-hour day and that he "could not perform even sedentary work because he was not able to get comfortable and needed to change positions every 10 to 15 minutes." (R.

19). However, the ALJ, in this instance, reasonably discounted Plaintiff's testimony by referring to Plaintiff's activities of daily living, the inconsistencies in Plaintiff's testimony about a limp, and the relatively normal results observed by Dr. Edge upon physical examination. (R. 19-20). The ALJ's credibility determination was in compliance with SSR 96-7p and was, therefore, not patently wrong.

## VII.  Conclusion

The ALJ in this case could have concluded that Plaintiff's back condition prohibited him from performing light work for long enough to maintain gainful employment. However, she did not. While the Court might have decided this case differently, we are not at liberty to do so.

The ALJ's RFC assessment is supported by substantial evidence, and the credibility determination was not patently wrong. The final decision of the Commissioner is, therefore, **AFFIRMED.**

SO ORDERED.

Dated:  March 21, 2007.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Copy to:

Steve Green
3555 Epworth Road
Newburgh, IN  47630

Electronic Copy to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov